(No. 40092.—■)

The People *ex rel.* Mack Smith, Jr., Petitioner, *vs.* Martin Jackson, Sheriff, Respondent.

*Opinion filed May 18, 1967.*

SCHAEFER, J., dissenting.

WAYNE R. JOHNSON, of Joliet, for petitioner.

GEORGE E. SANGMEISTER, State's Attorney, of Joliet, (JOHN C. BLAKSLEE, Assistant State's Attorney, of counsel,) for respondent.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court;

By leave of court the petitioner, Mack Smith, filed a petition for an original writ of *habeas corpus* challenging his detention by the respondent, Martin Jackson, sheriff of Will County. The facts are undisputed and only questions of law are involved.

It appears from the petition that in 1953 the petitioner was convicted of the crime of rape and sentenced to the penitentiary for a term of 20 years. By reason of credit for good time served the sentence expired on June 10, 1966, and the petitioner was scheduled to be released from the penitentiary on that date. On June 9, the State's Attorney of Will County, where petitioner was confined, filed a petition alleging that the petitioner had been a sexually dangerous person for more than one year prior to that date and requesting a hearing to determine whether the petitioner was, in fact, a sexually dangerous person. The petitioner was brought before the circuit court of the 12th Judicial Circuit in Will County on June 10 and the court appointed an attorney to represent him. The court initially entered an order remanding the petitioner to the custody of the warden of the penitentiary but at the request of the petitioner and with the consent of the State's Attorney of Will County he was not returned to the penitentiary but was remanded to the custody of the sheriff of Will County.

On June 20 counsel for the petitioner entered a special and limited appearance objecting to the jurisdiction of the court over the person of the petitioner. In support of the limited appearance counsel suggested that the court lacked jurisdiction because the proceeding was civil in nature and the petitioner had not been served with a summons. It was also urged that the court lacked jurisdiction because the proceedings had not been completed prior to the expiration of petitioner's sentence. The final ground stated in support of the limited appearance was that the petition was filed by the State's Attorney of Will County in the name of the People of the State of Illinois rather than being brought in

the name of the Department of Public Safety of Illinois. The court overruled the limited appearance and granted the State's Attorney leave to amend the petition to show that the proceeding was brought on behalf of the Department of Public Safety.

In this original proceeding in this court, petitioner has abandoned any claim with respect to the service of summons but again urges that he is illegally confined by the respondent because the proceeding was not brought by the proper party and because all proceedings were not completed prior to the expiration of his sentence. The petition filed in the trial court was filed under the provisions of section 8 of the State Penitentiary Act, (Ill. Rev. Stat. 1965, chap. 108, par. 112,) which, so far as it is relevant here, provides as follows:

"Before any convict who has been confined in the Illinois State Penitentiary for the crime of rape, * * * is released upon the expiration of his sentence, the Department of Public Safety may file with the circuit court, of the county in which such convict is confined, a petition in writing setting forth facts tending to show that the convict is * * * a sexually dangerous person. In the case of a sexually dangerous person, such mental disorder shall have existed not less than one year prior to the date of filing such petition before the Department may file such petition."

In our opinion the objection that the petition was not filed by the proper party is not well taken. The original petition bore the caption, "People of the State of Illinois v. Mack Smith, Jr." When the objection was raised in the trial court the court asked the assistant State's Attorney if he would state for the record that he had the authority of the Department of Public Safety to bring the petition and the prosecutor stated, "I make the statement unequivocally for the record." In addition to this statement in open court the prosecutor filed an affidavit stating that the petition was brought by him at the request of and under the direction of

the Department of Public Safety of the State of Illinois. The petition was then amended by leave of court to show that it was brought on the relation of the Department. It is clear from the record that the proceeding was commenced by the Department of Public Safety as provided in the above section and the fact that the petition was filed by the State's Attorney of Will County and that it did not originally state that it was brought on the relation of the Department is of no significance.

The contention that the trial court lacked jurisdiction because the proceedings were not completed prior to the expiration of the petitioner's sentence must be resolved by a construction of the statute. There is no express requirement in the statute as to when the proceedings must be completed, and the only requirement is that the petition be filed before a convict *is released upon the expiration of his sentence.* A prior act somewhat similar to the one in question here was considered by us in *People ex rel. Elliott v. Juergens,* 407 Ill. 391, in which we held the act valid. The precise question involved in the present case was not involved there for in that case there was no issue that the defendant was held beyond the expiration of his sentence. However, certain observations we made in that case are pertinent here. We pointed out that the purpose of the act was to protect the people from a person who has already served his time in the penitentiary but who was still a menace because he had become sexually dangerous. We also pointed out that the State has not only the power but the duty to protect citizens from persons who are sex criminals and who have not recovered from their criminal propensities while serving their sentences in the penitentiary, and noted that not only public safety but public morals were involved. We further drew an analogy between the act in question and the statutes pertaining to mentally ill persons and pointed out that such persons may be detained for a limited time where such restraint was necessary for their protection

or the protection of other persons. It is clear that the intention of the legislature was to provide a procedure which would prevent the release of sexually dangerous persons who have served their sentences in the penitentiary. To carry out this purpose the Department of Public Safety is authorized and directed to cause inquiry and examination to be made at suitable intervals to ascertain whether any convict has become sexually dangerous while in custody. Because the purpose of the act is to prevent the release of such a person it is of the greatest importance that an examination be made shortly before the expected release date since the condition of the convict upon that date is the relevant consideration and it obviously would be of no benefit to cause an examination to be made and a hearing to be held several months prior to the convict's release. If an examination made shortly prior to the release date reveals that the convict might be sexually dangerous a judicial determination of that question is required. In the nature of things it may be expected that some reasonable delay would ensue in the appointment of a commission to examine the petitioner, in the actual examination of him by the commission, and in the trial of the cause. Bearing in mind the intent of the statute to protect society from sexually dangerous persons, it is not unreasonable to assume that the legislature intended that the person not be released until his condition could be ascertained even though his original sentence has expired. The petition under section 8 and the petitioner's detention were proper.

The petitioner argues, in the alternative, that the proceedings against him under section 8 were unreasonably extended beyond the expiration date of his sentence, in violation of the above section and the due process requirements of the Illinois and Federal constitutions.

We believe that the section cannot, consistent with due process of law, be construed as authorizing the indefinite detention of a prisoner beyond the expiration date of his

sentence for purposes of determining his fitness to rejoin society. The section contemplates that all proceedings brought under it be completed with dispatch, inasmuch as an individual is being detained in custody beyond the expiration of his sentence solely on the strength of facts "tending to show" that he is a sexually dangerous person, rather than conclusive evidence to that effect. Hence, while we have recognized that some delay in the proceedings under section 8 against an incarcerated individual would ensue from a proper administration of that section, and that, in all likelihood, even a diligent prosecution by the State would extend beyond the expiration of the person's sentence, any delay involved therein must be reasonable.

The reasonableness of any delay in the above proceedings or, more specifically, the approximate length of time a convict may be detained after the expiration of his sentence, depends, of course, upon the particular facts and circumstances of the specific case. However, the factor most determinative of the reasonableness of any delay in these proceedings is whether the delay in question was caused by the inactivity of the State or by the affirmative actions of the accused in the form of motions or other dilatory proceedings. In the latter case, where the accused by his acts substantially contributes to the delay in the proceedings against him, such contribution militates against a finding that the resultant delay is not reasonable within statutory and constitutional dictates.

We find from the record and matters contained in the brief before us that the proceeding on the petition was not unreasonably extended in violation of the petitioner's right of due process. The writ of *habeas corpus* is hereby quashed.

*Writ quashed.*

Mr. JUSTICE SCHAEFER, dissenting:

The petitioner in this original *habeas corpus* action was entitled to be released from the penitentiary when his term

of imprisonment expired on June 10, 1966. The proceedings that might, or might not, authorize the continued detention of the petitioner have not been completed. He remained in custody, and the People's answer to the petition for rehearing stated that the matter was set for trial on June 9, 1967. The inordinate delay was by no means solely attributable to the petitioner. In my opinion his continued incarceration after he has served his sentence is not authorized by any statute and violates his rights under the constitution of Illinois and of the United States.

As I read the court's opinion in *People ex rel. Elliott* v. *Juergens,* 407 Ill. 391, the statute providing for the continued detention of criminal sexual psychopaths after their sentences have been served was sustained only upon the ground that the steps contemplated by the statute would be completed prior to the expiration of sentence. In that case the expiration date of the prisoner's sentence was February 24, 1950. A petition of the Department of Public Safety alleging that he was a sexual psychopath was filed on January 10, 1950, in the county court of Randolph County. The county judge was of the opinion that the statute was unconstitutional, and he had previously so held in several cases. On January 10, 1950, he again held the statute invalid and denied the Department's petition. On January 23, 1950, the *mandamus* action which ultimately came before this court was filed on the relation of the Attorney General. Before judgment was entered in that action, however, the prisoner was discharged from the penitentiary when his sentence expired by operation of law on February 24, 1950.

Thereafter the Hon. Ralph L. Maxwell, then circuit judge, denied the petition for *mandamus* on two grounds: first, that the question presented had become moot; and second, that the acts complained of were within the judicial discretion of the county judge and were not subject to review by *mandamus.* Upon appeal to this court, the Attorney General contended that the question presented was not moot,

because under the statute "the convict cannot be 'released' in the legal sense of the term until the law has been complied with. * * * If the Criminal Sexual Psychopath Act is constitutional, then this is simply a case where a prisoner has been discharged without authority of law; for he has not had the medical examination that the act requires as a prerequisite to his restoration to freedom. * * * The fact that the prisoner is physically at large and perhaps may not, as a practical method [sic], ever be apprehended, is of course not material. He is subject to reapprehension and to the examination required by the Criminal Sexual Psychopath Act."

This court affirmed the judgment of the circuit court upon the second ground stated in Judge Maxwell's order, and did not directly discuss the contention that the case was moot. But the opinion of the court squarely rejected the Attorney General's contention that the procedures authorized by the statute could take place after the prisoner's term of imprisonment had ended. "The act further provides that before the expiration of the sentence of any convict who has been confined for certain sex crimes, or for attempts to commit the same, the Department of Public Safety shall apply to the county court of the county where the convict is confined to require an examination to be made of such convict to determine whether he is insane or feeble-minded, or is a criminal sexual psychopath; and if such convict is found to be insane, feeble-minded or a criminal sexual psychopath he shall, upon the expiration of his sentence, be committed to the Department of Public Welfare for confinement in an appropriate State hospital, best suited and equipped to rehabilitate and care for him. * * * The law provides he shall be examined by physicians while he is still in confinement in the penitentiary, and it is after his term of imprisonment has expired that he is delivered to the Department of Public Welfare. He has no ground to complain of the examination during the time he is in prison,

and after the term of his imprisonment ends he is entitled to demand a hearing before a jury on the question of whether he is actually a criminal sexual psychopath, as found by the commission. This statute does not, as we interpret it, permit a prisoner, after his discharge, to be seized and detained by the process indicated above, but it must take place before the term has ended, so regardless of all other questions there can be no complaint of the examination of the prisoner, as required by the act." 407 Ill. at 398.

In my opinion, unless the proceedings authorized by the statute are completed "before the term has ended" the prisoner must be discharged. Civil proceedings for his commitment may thereafter be instituted, but I do not understand by what authority the State may constitutionally extend his imprisonment without a determination of his mental condition. Our own decision in *People ex rel. Elliott* v. *Juergens*, 407 Ill. 391, indicates the seriousness of the constitutional problem.

In *Baxstrom* v. *Herold*, 383 U.S. 107, 15 L. Ed. 620, the United States Supreme Court held that equal protection was violated by a New York statutory provision under which a person could be civilly committed at the expiration of a prison sentence without the jury determination available to all other persons civilly committed in New York. And previously the Court of Appeals for the Second Circuit had held unconstitutional a New York statute which provided that ex-convicts in State mental hospitals could be summarily transferred to an institution for the criminally insane while all other patients in State mental hospitals could be transferred only after a judicial proceeding. (*United States* v. *McNeill*, (2d cir.) 294 F.2d 117.) These cases show that the fact that a person has been imprisoned does not allow the State to do away with procedural protections afforded other persons who are alleged to be dangerous to society because of their mental condition.

Moreover, I do not believe that the General Assembly intended the construction that the majority has adopted. The statute provides that before any convict who has been confined in the penitentiary for certain enumerated crimes, including rape, is released upon the expiration of his sentence, the Department of Public Safety may file in the circuit court a petition "setting forth facts tending to show that the convict is [1] mentally ill, or [2] in need of mental treatment, or [3] mentally deficient with continuing criminal propensities, or [4] a sexually dangerous person." (Ill. Rev. Stat. 1965, chap. 108, par. 112.) As to the first three of these categories, the statute clearly contemplates that the entire statutory proceeding, including the appointment and report of the commission and the hearing before the jury, must be concluded before the respondent's term of imprisonment expires. It provides: "If the respondent in any proceedings under this Act is found to be mentally ill, or in need of mental treatment, or mentally retarded with continuing criminal propensities, *then he shall upon the expiration of his sentence,* be committed to the Department of Mental Health for confinement in the state hospital which it designates." Ill. Rev. Stat. 1965, chap. 108, par. 112. (Emphasis supplied.)

There is no similar explicit requirement in the present statute with respect to a convict who falls within the fourth category and is found to be a sexually dangerous person. The omission appears to have been inadvertent, however, for until the statute was amended to accomplish other purposes in 1957, it provided: "* * * and if such convict is found to be insane or feeble-minded or a sexually dangerous person, he shall upon the expiration of his sentence, be committed * * *." (Ill. Rev. Stat. 1955, chap. 108, par. 112.) Unless the same requirement that the proceedings be concluded before expiration of sentence is applied to all four categories, further constitutional questions will arise. It is hardly possible to discover a relevant difference between

those convicts alleged to be within the first three groups and those alleged to be "sexually dangerous," especially when none have yet been adjudged to be within any of the categories. It can not be that the sexually dangerous are more likely to commit criminal acts, for those in the third category are "mentally deficient with continuing criminal propensities," and all have previously committed rape or other sex crimes.